★ DEC 1 0 2013 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X

ROBERT BOLEY,

      Plaintiff,

 -against-

SERGEANT DMITRY DURETS, POLICE OFFICER
DEXTER DEONARINESINGH, JOHN DOE(S) #1-10,

      Defendants.

---------------------------------------------------------------- X

12-CV-4090 (ARR) (JO)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

Plaintiff Robert Boley, proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983 and New York state law against defendants Sergeant Dmitry Durets, Police Officer Dexter Deonarinesingh, and John/Jane Doe(s) #1-10. His claims arise from his arrest in Brooklyn, New York on August 23, 2009 and his subsequent prosecution. Now before the court is defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, defendants' motion is granted with respect to plaintiff's § 1983 excessive force claim and denied with respect to plaintiff's § 1983 false arrest and malicious prosecution claims.

## BACKGROUND

Plaintiff's complaint alleges that on August 23, 2009, plaintiff was "lawfully inside of his home" at 1935 East 18th Street in Brooklyn, New York when New York Police Department ("NYPD") officers Sergeant Durets, Dexter Deonarinesingh, and John/Jane Doe(s) #2-10 of the 61st Precinct arrived at his home. Compl. ¶ 12. The officers asked if his name was Robert, and plaintiff replied that it was. Id. ¶ 13. The officers asked where plaintiff's son was, and plaintiff

1

said he would "go get him." Id. ¶ 14. As plaintiff was walking back to his house, the officers jumped on him, grabbed him, and said he was being charged with "mopicity." Id. ¶¶ 15-16.

Plaintiff states that the officers "placed him forcibly in handcuffs" and "tightened the handcuffs as much as possible causing extreme anguish and pain." Id. ¶ 16. Plaintiff "pleaded" with the officers to loosen the handcuffs, but the officers did not respond. Id. ¶ 17. Plaintiff alleges that the officers "physically encountered, touched, and came into physical contact with Plaintiff...against his will and without his consent." Id. ¶ 18. The officers "caused Plaintiff to the ground [sic]; continued to cause part(s) of their bodies to come into contact with plaintiff's body and particularly his torso and caused foreign objects to violently injure plaintiff's arms and wrists." Id. ¶ 19. The physical contact included "forceful contact between the hands of at least one 'plain clothes' police officer and Plaintiff's hands, and forceful contact between the hands of at least one uniformed police officer and Plaintiff's hands." Id. ¶ 30.

The officers took plaintiff to the 61st Precinct, where officer John Doe #1 fingerprinted him. Id. ¶ 17. Plaintiff remained in custody for thirty-three hours "with no food or water, no ability to use the rest room or facilities and was denied a phone call." Id. ¶ 38. He was arraigned on August 24, 2009 on charges of robbery in the first, second, and third degree, assault in the second degree, grand larceny in the fourth degree, petit larceny, and criminal possession of a weapon in the fourth degree. Id. ¶ 39. Plaintiff pleaded not guilty and was released on his own recognizance. Id. He appeared for approximately thirteen court dates over a fifteen-month period. Id. ¶ 48. After a jury trial, plaintiff was convicted of assault in the third degree, a misdemeanor, in violation of New York Penal Law § 120.00. This conviction was reversed on appeal on May 1, 2013. People v. Boley, 963 N.Y.S.2d 726 (App. Div. 2013). The Appellate Division found that the guilty verdict was against the weight of the evidence because the

government did not establish beyond a reasonable doubt that the complainant suffered a "physical injury" within the meaning of the relevant state statute. Id. The case was remanded to the Kings County Supreme Court, which entered an order dismissing all charges against plaintiff on May 17, 2013. Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss ("Opp'n"), Ex. B.

Plaintiff alleges that as a result of his arrest and prosecution, he suffered "serious permanent personal injuries of body and mind as well as special damages and loss and/or diminution in his enjoyment of life." Compl. ¶ 62. He asserts claims under § 1983 and New York state law and seeks $24 million in damages. Plaintiff initially filed this action on August 15, 2012 against twenty defendants. Dkt. #1. On August 27, 2012, this court dismissed the claims against two witnesses who testified against plaintiff at his criminal trial, Albert DeVito and Carolyn Zeitler, because witnesses enjoy absolute immunity from suit under § 1983. Dkt. #4. The court dismissed the claims against two judges who presided over plaintiff's state court proceedings, the Honorable Guy Mangano and the Honorable Martin Murphy, on the grounds of judicial immunity. Id. Finally, the court dismissed the claims against the Kings County District Attorney's Office, District Attorney Charles J. Hynes, and two assistant district attorneys on the grounds of prosecutorial immunity. Id. The court allowed plaintiff's claims to proceed against defendant officers Durets, Deonarinesingh, and John Does 1-10. On June 7, 2013, the remaining defendants moved to dismiss the complaint. Plaintiff opposes the motion to dismiss and seeks leave to amend the complaint. Opp'n 7.[1]

---

[1] Defendants note that plaintiff's opposition memorandum is untimely according to the briefing schedule agreed upon by the parties, and it was filed after defendants had already filed the motion with the court. Dkt. #29. Therefore, the court granted defendants an opportunity to file an additional reply to the plaintiff's opposition memorandum. Dkt. #30. After defendants filed a reply, plaintiff filed additional submissions, Dkt. #31, 36, 37, & 38. These submissions relate solely to plaintiff's claims of false arrest and malicious prosecution. For the reasons set forth in this opinion, the court finds that the plaintiff's complaint and proposed amended complaint state claims for false arrest and malicious prosecution. Therefore, the court does not need to rely on plaintiff's additional submissions filed after defendants' reply, and these submissions do not affect the ruling on the instant motion.

# DISCUSSION

I.  **Standard of Review**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Twombly, 550 U.S. at 555-56; Freedom Holdings, Inc. v. Spitzer, 363 F.3d 149, 151 (2d Cir. 2004). Courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, it is well settled that pro se complaints are held to less stringent standards than pleadings drafted by attorneys, and the court is required to construe a plaintiff's pro se complaint liberally and to interpret it as raising the strongest arguments it suggests. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008).

In deciding a motion to dismiss under Rule 12(b)(6), a district court may consider "the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken." Arrocha v. City Univ. of N.Y., 878 F. Supp. 2d 364, 368 (E.D.N.Y. 2012). The court may take judicial notice of public records such as arrest reports and certificates of disposition. See, e.g., Harris v. City of N.Y., No. 09-CV-3474 (KAM), 2013 WL 4858333, at *2 (E.D.N.Y. Sept. 10, 2013); Wims v. N.Y.C. Police Dep't, No. 10 Civ. 6128(PKC), 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011).

4

## II. Leave to Amend

In response to defendants' motion to dismiss, plaintiff seeks leave to amend the complaint and has filed a proposed amended complaint. Opp'n, Ex. D. A plaintiff is entitled to amend a complaint once as a matter of course within twenty-one days of service of a motion to dismiss. Fed. R. Civ. P. 15(a)(1)(B). Where, as here, plaintiff seeks leave to amend after that time period has elapsed, the plaintiff must seek the opposing party's consent or the court's leave, and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A pro se plaintiff should be granted leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (quoting Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)); see also Pietsch v. Marcantonio, No. 13-CV-4696 (JS)(WDW), 2013 WL 6064204, at *5 (E.D.N.Y. Nov. 18, 2013). Therefore, the court grants plaintiff leave to amend the complaint. Before dismissing any of plaintiff's claims, the court will consider whether plaintiff's proposed amended complaint pleads sufficient additional facts to survive a motion to dismiss.

## III. Plaintiff's 42 U.S.C. § 1983 Claims

In order to make out a claim under 42 U.S.C. § 1983, plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges or immunities secured by the Constitution or the laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)).[2] For the first element, plaintiff

---

[2] Defendants initially argued in their motion to dismiss that plaintiff's § 1983 claims were barred by the doctrine of Heck v. Humphrey, 512 U.S. 477 (1994), because plaintiff had been convicted in the underlying state criminal proceeding. Defs.' Mem. of Law in Supp. of Mot. to Dismiss 4-6. Plaintiff then served defendants with the appellate court decision showing that his conviction had been reversed on appeal after the filing of the complaint. Dkt. #24.

5

alleges that defendants were acting under color of state law as NYPD police officers. Compl. ¶¶ 8-11. For the second element, the complaint asserts three deprivations of plaintiff's constitutional rights: false arrest, malicious prosecution, and excessive force.[3]

*A. False Arrest*

A § 1983 claim for false arrest is "substantially the same" as a claim for false arrest under New York state law. Weyant v. Okst, 101 F.3d 845, 852 (2d. Cir. 1996). Plaintiff must prove that defendants intentionally confined plaintiff, that plaintiff was conscious of the confinement and did not consent to it, and that the confinement was not otherwise privileged. See Jocks v. Tavernier, 316 F.3d 128, 134-35 (2d Cir. 2003) (quoting Broughton v. State, 335 N.E.2d 310, 314 (N.Y. 1975)); Harris v. Cnty. of Nassau, 581 F. Supp. 2d 351, 354-55 (E.D.N.Y. 2008).

The existence of probable cause for the arrest renders the confinement privileged and constitutes a complete defense to a false arrest claim. Jocks, 316 F.3d at 135; Covington v. City of N.Y., 171 F.3d 117, 122 (2d Cir. 1999). Probable cause to arrest exists when the officer has "knowledge or reasonably trustworthy information . . . sufficient to warrant a person of

---

Defendants now concede that Heck v. Humphrey is inapplicable. Defs.' Reply Mem. of Law 1. Therefore, the court will not address this ground for the motion.

[3] Plaintiff's complaint could also be liberally construed to raise claims of unreasonable detention or unconstitutional conditions of confinement. He asserts in his complaint that after officers arrested him and brought him to the 61st Precinct, he was in custody for thirty-three hours "with no food or water, no ability to use the rest room or facilities and was denied a phone call." Compl. ¶ 38. Neither party has addressed these possible claims in the briefing of this motion. The court notes that the pleadings at this stage do not allege sufficient facts to make out these claims. Regarding a potential claim of unreasonable detention, the Supreme Court has held that detention of more than forty-eight hours before a probable-cause hearing is presumptively unreasonable. Cnty. of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991). A shorter detention, as alleged here, may raise a § 1983 claim if the detention is unreasonably prolonged for reasons such as "gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." Id.; see also Bryant v. City of N.Y., 404 F.3d 128, 137 (2d Cir. 2005) (discussing McLaughlin). Plaintiff has alleged no such reasons here. Regarding a potential claim of unconstitutional conditions of confinement, the court must consider whether the "challenged conditions amount to 'punishment' without due process of law." Cruz v. Reiner, No. 11 Civ. 2131 (BMC)(SMG), 2011 WL 6204101, at *4 (E.D.N.Y. Dec. 12, 2011) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). Plaintiff must show a deprivation that is serious enough to amount to a denial of "the minimal civilized measures of life's necessities," and a "sufficiently culpable state of mind" on the part of the defendant. Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Plaintiff's assertion in the complaint regarding his conditions of confinement does not rise to this standard. Plaintiff can choose to amend his complaint if he can allege sufficient additional facts to make out either of these claims.

6

reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852. A prosecution resulting in conviction generally establishes that probable cause existed for the arrest. Harris, 2013 WL 4858333, at *5. However, where, as here, the conviction has been reversed on appeal, the conviction "is no evidence of the existence of probable cause," and the reversal is itself admissible to challenge the justification for the arrest. Weyant, 101 F.3d at 852; see also Gibson v. City of N.Y., No. 96 CV 4958, 1998 WL 960303, at *3 (E.D.N.Y. Dec. 9, 1998).

Taking all allegations in the complaint to be true, as the court must do at this stage, plaintiff has alleged all the elements of a § 1983 false arrest claim. Plaintiff's complaint alleges that he was at home when defendants came to his house, confirmed his name, asked about his son's whereabouts, and then arrested him. This sequence of events provides no reason to believe defendants had probable cause to arrest plaintiff for any crime. See Posr v. Court Officer Shield No. 207, 180 F.3d 409, 415-16 (2d Cir. 1999) (accepting facts as alleged in plaintiff's complaint, court cannot construe plaintiff's actions as creating probable cause to arrest); Dotson v. Farrugia, No. 11 Civ. 1126(PAE), 2012 WL 996997, at *4 (S.D.N.Y. Mar. 26, 2012) (taking as true plaintiff's description of his conduct prior to his arrest and finding that "without more, such conduct would not supply probable cause for an arrest"). Therefore, plaintiff alleges that when the officers arrested plaintiff and took him to the 61st Precinct, they confined him, he was aware of the confinement, he did not consent to it, and the confinement was not privileged.

Defendants argue that the officers had probable cause to arrest plaintiff based on the allegations of a complaining witness. Defs.' Reply Mem. of Law 2. A report of a crime by a complaining witness can establish probable cause for an arrest "absent circumstances that raise doubts as to the victim's veracity." Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d. Cir.

7

1995); see also Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) (report of a "putative victim or an eyewitness" can be used to establish probable cause). Here, defendants cite an NYPD arrest report to establish the information from a complaining witness that the officers acted upon when arresting plaintiff. Defs.' Reply Mem. of Law 3. In some prior cases, courts in this Circuit have taken judicial notice of arrest reports, and they have dismissed false arrest claims on Rule 12(b)(6) motions based on a finding that the arrest report established probable cause. See, e.g., Betts v. Shearman, No. 12 Civ. 3195(JPO), 2013 WL 311124, at *6 (S.D.N.Y. Jan. 24, 2013) (dismissing false arrest claim where plaintiff argued his wife falsely accused him of assault); Awelewa v. New York City, No. 11 Civ. 778(NRB), 2012 WL 601119, at *4-*5 (S.D.N.Y. Feb. 23, 2012) (dismissing false arrest claim where arrest report stated that store security observed plaintiff taking merchandise, and plaintiff alleged that officer failed to investigate). However, in those cases, plaintiffs acknowledged that complaining witnesses had made allegations against them and sought to dispute the accuracy of the reports. Here, plaintiff's complaint does not reference any report by a complaining witness as a basis for his arrest. Instead, he simply asserts that he was lawfully at home when officers came and arrested him.

The complaining witness's allegations, as cited in the arrest report, are insufficient at this stage of the litigation to rebut plaintiff's contention and establish probable cause for the arrest. The arrest report states that plaintiff approached the complainant with a baton, choked and struck the complainant, removed $144 from the complainant's pocket, and threatened to kill the complainant. N.Y.P.D. Omniform System Arrest Report K09680087-Q, Aug. 23, 2009. This report may establish probable cause to believe that a crime occurred, but it does not establish probable cause to believe that plaintiff was the perpetrator, because it does not explain how the complainant identified plaintiff to the police. The report describes the complainant's relation to

plaintiff as "stranger," so there is no reason to think the complainant provided plaintiff's name or address to the police. The report states that the perpetrator was wearing jeans, blue shoes, a gray shirt, headgear of unknown color, and eyeglasses, which is insufficient on its own to establish probable cause because this description could apply to numerous individuals. See Jenkins v. City of N.Y., 478 F.3d 76, 90 (2d Cir. 2007) ("Officers may, in certain circumstances, base probable cause on a victim's description of her assailant. It has long been established, however, that when the description could have applied to any number of persons and does not single out the person arrested, probable cause does not exist."). It is quite possible that the complainant provided additional information to the officers that led them to identify the plaintiff, but the court cannot draw this inference in favor of defendants on a motion to dismiss. See Cornett v. Brown, No. 04CV0754(DGT)(LB), 2006 WL 845568, at *8 (E.D.N.Y. Mar. 30, 2006) ("Although it is certainly reasonable to assume that [complainant] pointed out plaintiff to [the officer] and informed [the officer] of the March 23 complaint report, such an assumption would amount to an impermissible inference in favor of the moving party.").

Defendants also ask the court to rely on the appellate court decision reversing plaintiff's conviction. Defs.' Reply Mem. of Law 3. The decision references plaintiff's state criminal trial, where the complainant testified that plaintiff injured him. People v. Boley, 963 N.Y.S.2d 726, 727 (App. Div. 2013). Yet this testimony at trial is irrelevant to the issue of probable cause for the arrest. It does not explain what the complainant told police, what information the officers acted upon when arresting plaintiff, or how the officers identified the plaintiff as the one who allegedly caused the complainant's injuries.

For the same reasons, defendants are not entitled to qualified immunity on plaintiff's false arrest claim. The doctrine of qualified immunity shields government officials from liability

9

for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Even if defendants lacked probable cause to arrest plaintiff, they are entitled to qualified immunity if there was "arguable probable cause at the time of arrest—that is, if officers of reasonable competence could disagree on whether the probable cause test was met." Jenkins, 478 F.3d at 87 (quoting Lennon v. Miller, 66 F.3d 416, 423-24 (2d. Cir. 1995)) (internal quotation marks omitted). Defendants argue that they are entitled to qualified immunity because they acted on information from a complaining witness. Defs.' Second Reply Mem. of Law 5. However, for the reasons discussed above, the record simply does not establish how the police connected the complainant's allegations to the plaintiff as the perpetrator. Without that link, the court cannot find at this stage that defendants had arguable probable cause to arrest plaintiff. See Biswas v. City of N.Y., No. 12 Civ. 3607(JGK), 2013 WL 5421678, at *10 (S.D.N.Y. Sept. 30, 2013) (where allegations against plaintiff were insufficient to establish probable cause, court cannot determine at motion to dismiss stage whether police officers are entitled to qualified immunity).

Therefore, plaintiff has stated a claim for false arrest under § 1983, and defendants' motion to dismiss plaintiff's false arrest claim is denied.

### B. *Malicious Prosecution*

To state a claim for malicious prosecution under § 1983, the plaintiff must establish the four elements of the tort of malicious prosecution under New York law: "(1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." Savino v. City of N.Y., 331 F.3d 63, 72 (2d Cir. 2003) (quoting Colon v. City of N.Y., 455 N.E.2d 1248 (N.Y. 1983)). The plaintiff must also show "a post-arraignment deprivation of

liberty that rises to the level of a constitutional violation." Lawrence v. City Cadillac, No. 10 Civ. 3324(PKC), 2010 WL 5174209, at *5 (S.D.N.Y. Dec. 9, 2010) (quoting Singer, 63 F.3d at 117). Plaintiff's proposed amended complaint alleges each of these elements.[4]

The first element requires plaintiff to show that defendant officers initiated the proceeding and to overcome the "presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding." Brome v. City of N.Y., No. 02 Civ. 7184(WHP), 2004 WL 502645, at *5 (S.D.N.Y. Mar. 15, 2004). Plaintiff can show that the law enforcement officers initiated a criminal proceeding "by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints." Mitchell v. Victoria Home, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006); see also Cameron v. City of N.Y., 598 F.3d 50, 63 (2d Cir. 2010) ("Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments."). Plaintiff can also overcome the presumption by showing that the officers created false evidence and forwarded it to prosecutors or withheld material information. Mitchell, 434 F. Supp. 2d at 227. Here, plaintiff's proposed amended complaint asserts that defendant officers had "knowledge that testimony being presented to the Grand Jury and District Attorney's Office was perjured" and "brought that evidence before the Grand Jury in hopes of getting an indictment." Opp'n, Ex. D, ¶ 29. Construing this allegation liberally, as the court must do for a pro se plaintiff, the amended complaint makes out a claim that defendant police officers initiated the proceeding by knowingly forwarding false evidence to prosecutors.

Second, the proceeding terminated in favor of plaintiff, since his conviction was reversed on appeal. The Kings County Supreme Court's certificate of disposition states that the dismissal

---

[4] The court will consider the assertions in plaintiff's proposed amended complaint along with the assertions in plaintiff's initial complaint. The proposed amended complaint was filed with plaintiff's opposition to defendants' motion to dismiss, and defendants were granted an opportunity to respond to plaintiff's opposition. Dkt. #30.

11

"is a termination of the criminal action in favor of the accused." Opp'n, Ex. B.

Third, plaintiff has made out a claim that defendants lacked probable cause. The inquiry here considers whether defendants had probable cause "to believe that [plaintiff] could be successfully prosecuted," which is separate from whether defendants had probable cause to arrest. Posr, 180 F.3d at 417. A grand jury indictment gives rise to a presumption of probable cause, which can be rebutted only if the plaintiff shows that the indictment was procured by bad faith police conduct such as fraud, perjury, or the suppression of evidence. Savino, 331 F.3d at 72-73. Defendants argue that plaintiff's malicious prosecution claim fails because he was indicted by a grand jury. Defs.' Reply Mem. of Law 4. However, plaintiff asserts that defendants knowingly presented prosecutors with false evidence in the form of perjured witness testimony. Opp'n, Ex. D, ¶ 29. Therefore, plaintiff alleges bad faith conduct by defendants that would rebut the presumption of probable cause created by the grand jury indictment. See Gannon v. City of N.Y., 917 F. Supp. 2d 241, 245 (S.D.N.Y. 2013) (plaintiff alleged that officer lied about search to secure indictment); Cooper v. City of New York, No. 12 Civ. 8008(SAS), 2013 WL 5493011, at *6 (S.D.N.Y. Oct. 2, 2013) (plaintiff alleged that officer signed an affidavit with information he knew to be false and provided it to prosecutor); Matthews v. City of N.Y., 889 F. Supp. 2d 418, 440 (E.D.N.Y. 2012) (plaintiff alleged that officers coerced false confession and provided the confession to prosecutors); Bouche v. City of Mt. Vernon, No. 11 Civ. 5246(SAS), 2012 WL 987592, at *7 (S.D.N.Y. Marc. 23, 2012) (plaintiff alleged that police department improperly created and used unreliable eyewitness identifications); Parker v. City of N.Y., No. 09-CV-910 (JG), 2010 WL 1693007, at *4 (E.D.N.Y. Apr. 28, 2010) (plaintiff alleged that officer was aware of exculpatory eyewitness account, knew that witnesses were lying, and coerced witnesses into testifying against plaintiff).

The court notes that plaintiff cannot rely on his additional allegation that defendants themselves committed perjury before the grand jury. Opp'n, Ex. D, ¶ 30. The Supreme Court has held that grand jury witnesses are entitled to absolute immunity for § 1983 claims based on their testimony. Rehberg v. Paulk, 132 S. Ct. 1497, 1506 (2012). "This rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." Id. Therefore, plaintiff cannot base a malicious prosecution claim on defendant officers' allegedly false grand jury testimony. Cooper, 2013 WL 5493011, at *4; see also Brown v. City of N.Y., No. 08-CV-5095 (FB)(MDG), 2013 WL 1338785, at *4 n.3 (E.D.N.Y. Apr. 1, 2013) ("As a result of Rehberg, plaintiff cannot base his malicious prosecution claim on the theory that [officer] lied to the grand jury, nor can he use [officer's] grand jury testimony to rebut the presumption of probable cause."); Matthews, 889 F. Supp. 2d at 439 (malicious prosecution claims against police officers "based on allegedly false grand jury and pretrial hearing testimony fail as a matter of law"). However, plaintiff can still raise a malicious prosecution claim based on the allegation that defendants knowingly forwarded false evidence to prosecutors.

Fourth, plaintiff sufficiently alleges that defendants acted with malice, because he alleges that they pursued the prosecution without probable cause. "A lack of probable cause generally creates an inference of malice." Boyd v. City of N.Y., 336 F.3d 72, 78 (2d Cir. 2003) (citing Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 131 (2d Cir. 1997)); see also Matthews, 889 F. Supp. 2d at 441 ("Given that plaintiffs plausibly allege the absence of probable cause in initiating and continuing the prosecution of [plaintiff], malice may be inferred.").

Finally, plaintiff has alleged a post-arraignment deprivation of liberty sufficient to

implicate his Fourth Amendment rights. He was prosecuted on charges that included felony charges, and he was convicted of a misdemeanor charge. He asserts that he had to appear thirteen times in court over a period of fifteen months. Compl. ¶ 48. These facts are sufficient to make out a post-arraignment deprivation of liberty. See Rohman v. N.Y.C. Transit Auth., 215 F.3d 208, 216 (2d Cir. 2000) (plaintiff showed deprivation of liberty where he was required to return to court at least five times before chargers were dropped); Murphy v. Lynn, 118 F.3d 938, 946 (2d Cir. 1997) (requiring plaintiff to appear in court eight times and restricting him from traveling out of state constituted seizure within meaning of Fourth Amendment).

At this stage, drawing all inferences in favor of plaintiff, the court finds that plaintiff has asserted all five elements of a claim for malicious prosecution under § 1983, and defendants' motion to dismiss is denied.

*C. Excessive Force*

The Fourth Amendment prohibits officers from using an unreasonable degree of force to carry out an arrest. Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010). In assessing § 1983 claims for excessive force, courts must apply an objective test, judging the use of force "from the perspective of a reasonable officer on the scene." Graham v. Connor, 490 U.S. 386, 396-97 (1989). Here, plaintiff brings a claim of excessive force based on the officers' use of handcuffs during his arrest. To determine whether an officer's use of handcuffs constituted excessive force, the court must consider whether "1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." Esmont v. City of N.Y., 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005). "There is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." Lynch v. City of Mt. Vernon, 567 F.

Supp. 2d 459, 468 (S.D.N.Y. 2008) (collecting cases); see also Gonzalez v. City of N.Y., No. 98-CV-3084, 2000 WL 516682, at *4 (E.D.N.Y. Mar. 7, 2000) ("[I]f the application of handcuffs was merely uncomfortable or caused pain, that is generally insufficient to constitute excessive force.").

Plaintiff's complaint alleges the first two factors: that the handcuffs were tight enough to cause "extreme anguish and pain," Compl. ¶ 16, and that defendants ignored his request to loosen the handcuffs, id. ¶ 17. However, plaintiff has not pleaded any lasting physical injury to his wrists beyond pain during the incident. He states that defendants "caused foreign objects to violently injure plaintiff's arms and wrists," id. ¶ 19, which could refer to the use of handcuffs. However, plaintiff does not provide any specific allegations regarding the type of injuries that he suffered, nor does he allege that he sought medical attention for injuries to his wrists. Therefore, his allegations of tight handcuffing are insufficient to support a claim for excessive force. See Guerrero v. City of N.Y., No. 12 Civ. 2916, 2013 WL 5913372, at *6 (S.D.N.Y. Nov. 4, 2013) (allegation that tight handcuffs caused "swelling and contusions" insufficient to state claim for excessive force); Wilder v. Vill. of Amityville, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003) (allegation that handcuffing caused inflammation for a period of twenty-four hours does not rise to the level of excessive force).

Plaintiff argues that his allegations of excessive force are not solely based on defendants' use of handcuffs. Opp'n 3-4. His complaint alleges that defendants caused him to fall to the ground, that defendants' bodies came in contact with his body, and that defendants' hands made "forceful contact" with his hands. Compl. ¶¶ 19, 30. However, he merely asserts that he suffered "physical injuries" and "serious permanent personal injuries of body and mind" without specifying the type of injuries. Id. ¶¶ 20, 27. Plaintiff has not asserted "any specific or

identifiable physical or mental injury and harm beyond a conclusory assertion which, standing alone, is insufficient" to survive a motion to dismiss. Wims, 2011 WL 2946369, at *5; see also Guerrero v. City of N.Y., No. 12 Civ. 2916, 2013 WL 673872, at *5 (S.D.N.Y. Feb. 25, 2013) (conclusory allegation that officers "physically abused" plaintiff and "threw him around like a toy" were insufficient where plaintiff alleged no specific injury other than "mental and emotional harm"); Acosta v. City of N.Y., No. 11 Civ. 856(KBF), 2012 WL 1506954, at *10-11 (S.D.N.Y. Apr. 26, 2012) (allegations that officer punched plaintiff, threw him to ground, and forcibly handcuffed him were too conclusory and non-specific to survive motion to dismiss). Plaintiff's proposed amended complaint does not remedy this deficiency, asserting mental, economic, and psychological injuries that "may be permanent" but not any specific physical injuries. Opp'n, Ex. D, ¶ 26.

Therefore, the court grants defendants' motion to dismiss plaintiff's § 1983 excessive force claim. However, the court is mindful that plaintiff is proceeding pro se. While he has already sought to amend his complaint once, his opposition memorandum suggests that he was primarily amending his complaint to reflect the reversal of his criminal conviction on appeal. Opp'n 7. The court grants plaintiff leave to amend one additional time, but cautions plaintiff that he should not seek further amendment unless he is confident that he can plead sufficient additional facts to state a claim for excessive force.

IV. **Plaintiff's State Law Claims**

Plaintiff also asserts claims under New York state law. Since defendant has not moved to dismiss any of those claims, and neither party has briefed the issues regarding those claims, the court declines to address them at this time.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted with respect to plaintiff's § 1983 excessive force claim. The court grants plaintiff leave to amend his complaint one further time if he can plead sufficient facts to cure the deficiency. Defendants' motion to dismiss is denied with respect to plaintiff's § 1983 false arrest and malicious prosecution claims. The case is respectfully referred to the Honorable James Orenstein, United States Magistrate Judge, for supervision of pretrial discovery matters.

SO ORDERED.

/S/ Judge Allyne R. Ross
Allyne R. Ross
United States District Judge

Dated: December 10, 2013
Brooklyn, New York

**SERVICE LIST:**

**Plaintiff:**
Robert Boley
1935 East 18th Street
Brooklyn, NY 11229